IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| QUANICA S. ELLIS, ) | Civil Action No. 3:04-21897-GRA-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

On August 30, 2003, Plaintiff applied for SSI and for DIB. Plaintiff's applications were denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held December 8, 2003, at which Plaintiff appeared and testified, the ALJ issued a decision dated March 13, 2004, denying benefits. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff can perform.

Plaintiff was twenty-five years old at the time of the ALJ's decision. She has a high school education and past relevant work as a cashier, clerical worker, line server, dishwasher, banquet

server, housekeeper and sandwich maker. Plaintiff alleges disability since July 27, 2002, due to multiple sclerosis, blackouts, hypertension, and depression.

The ALJ found (Tr. 24):

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's multiple sclerosis, migraine headaches, hypertension, obesity, generalized anxiety disorder, and major depression are considered "severe" in combination based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. I find the claimant's allegations regarding her limitations are not fully credible for the reasons set forth in the body of the decision.

6. The claimant has the residual functional capacity for light unskilled work with a sit stand option, no crawling, no crouching, no climbing, no squatting, no kneeling, no driving of automotive equipment, and no exposure to unprotected heights or moving machinery.

7. The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).

8. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR §§ 404.1563 and 416.963).

9. The claimant has a "high school education" (20 CFR §§ 404.1564 and 416.964).

    10.    Transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

    11.    The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and 416.967).

    12.    Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 201.27 and 201.28 as a framework for decision-making, and based on the testimony of the vocational expert, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as parking lot attendant, storage facility clerk, and carton packer.

    13.    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

On June 25, 2004, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on August 16, 2004.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months…." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

**DISCUSSION**

Plaintiff alleges that: (1) the Commissioner erred by failing to find that Plaintiff's impairments met or equaled the severity of one of the Listing of Impairments ("Listings"), Appendix 1, Subpart P, Regulations No. 4; (2) the Commissioner improperly evaluated Plaintiff's credibility; and (3) the ALJ wrongly rejected the opinion of the consultative examiner.

A. <u>Substantial Evidence</u>

Plaintiff appears to allege that the ALJ's decision is not supported by substantial evidence. Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

<u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984); <u>Laws v. Celebreeze</u>, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. <u>Cornett v. Califano</u>, 590 F.2d 91, 93 (4th Cir. 1978).

The ALJ's decision is supported by substantial evidence including objective medical evidence. Significantly, none of Plaintiff's treating or examining physicians placed any restrictions on her ability to perform the physical requirements of work or found that she was totally and permanently disabled by any physical impairment. See <u>Lee v. Sullivan</u>, 945 F.2d 687, 693 (4th Cir. 1991)(finding that no physician opined that claimant was totally and permanently disabled supported a finding of no disability); <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996)(treating physician's opinion entitled to great weight).

Although Plaintiff suffered from episodes of syncope, multiple sclerosis, headaches, and hypertension, medications improved her symptoms. Substantial evidence in the medical record supports the ALJ's determination that Plaintiff could perform light work despite these impairments. During October 2001 and April 2002, Plaintiff had several syncopal episodes. Tr. 117-126. A CT of Plaintiff's brain was normal and physical examinations were essentially normal. Tr. 117, 119-120, 195. On April 9, 2002, Plaintiff was admitted to the Medical University of South Carolina ("MUSC") for evaluation. Tr. 129-133. An EKG was consistent with Wolff-Parkinson-White Syndrome[1] and tilt table testing was positive for induction of syncope, indicating a possible neurocardiogenic etiology. Tr. 129-130. An echocardiogram revealed mild tricuspid valve regurgitation. Tr. 133. Plaintiff was discharged on April 12, 2002 with a prescription for Lopressor (hypertension medication) and directions to resume activities as tolerated. Tr. 129-130.

Plaintiff was treated for headaches on April 14 and 16, 2002, and a syncopal episode on April 19, 2002. Tr. 189-194, 186. Dr. Diane Kamen evaluated Plaintiff on April 22, 2002 for continued syncope episodes. Tr. 183-185. Dr. Kamen noted that Plaintiff never filled her Lopressor prescription and never checked on the actual price of the medication. Tr. 183. Physical and mental examinations were essentially normal. Tr. 183-184. Plaintiff was provided with a financial counselor and a discount card for medications. Tr. 184. On May 23, 2002, Plaintiff had another episode of presyncope. She was diagnosed with presyncope and atypical chest pain and advised to follow up with Dr. Gold, a cardiologist. Tr. 182. There is no indication that Plaintiff

---

[1]Wolff-Parkinson-White syndrome is "the association of praroxysmal tachycardia (or atrial fibrillation) and preexcitation…" Dorland's Illustrated Medical Dictionary 1837 (30th ed. 2003).

5

followed up with the cardiologist. On July 27, 2002, Plaintiff was hospitalized at MUSC for evaluation of continued syncopal episodes. Tr. 134-135. Electrophysiology testing indicated Wolff-Parkinson-White Syndrome and the MRI demonstrated findings indicative of chronic demyelination compatible with multiple sclerosis. Tr. 136. Plaintiff was discharged on August 2, 2002 with prescriptions for Lopressor, Florinef, and baby aspirin. She was instructed to follow up with neurology on August 6, 2002, but there is no indication that she did so. Tr. 135.

On August 4, 2002, Plaintiff complained of headaches and weakness. Motrin was prescribed and she was advised to follow up with her scheduled neurology appointment that week. Tr. 175, 177. Plaintiff was treated at MUSC on August 10, 2002 for a syncopal episode. She was once again encouraged to keep her appointment with neurology. Tr. 170-174. On September 17, 2002, Plaintiff was examined at the MUSC Neurology Clinic. She complained of chronic headaches, and reported decreased sensation and strength in her left leg. Tr. 138. Examination revealed normal station, gait and coordination; pain in her left lower extremity; decreased strength in her left lower extremity; and normal deep tendon reflexes in the lower extremities. Tr. 137. A mental status examination was normal. Tr. 137. Dr. Grier wrote that she highly expected that Plaintiff multiple sclerosis. Tr. 137. An EEG showed a mild and non-specific abnormality. Tr. 137-138, 159.

On February 24, 2003, Plaintiff was examined by Dr. Gerald Quinn, at the request of the State agency. Tr. 238-239. Dr. Quinn noted that Plaintiff had no signs of organic mental deficit or serious affective disturbance; normal spontaneous station, gait, and balancing; very mild weakness of the distal left arm and leg not associated with true reflex asymmetry; mild diminished sensitivity to pain over her distal left arm and distal left lower extremity; and no evidence of

6

primary cerebellar deficit. Tr. 239. On October 3, 2003, Plaintiff underwent a lumbar puncture procedure and was started on Betaseron for treatment of her multiple sclerosis. Tr. 306. Plaintiff was further treated for left-sided weakness and headaches at MUSC on January 9 and March 3, 2004. Tr. 321 and 327.

The ALJ's decision is also supported by the opinion of the State agency physicians and psychologist who reviewed Plaintiff's medical records and completed residual functional capacity ("RFC") assessments. 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency … [physicians ]… regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review.").

On March 3, 2003, Dr. George Keeler reviewed Plaintiff's records and completed a Physical Residual Functional Capacity Assessment form. Dr. Keeler determined that Plaintiff could occasionally lift twenty pounds; frequently lift ten pounds; stand for about six hours in an eight-hour workday; and sit for about six hours in an eight-hour workday. He also noted that there was no evidence to support ongoing syncope after medication was started. Tr. 240-247. Dr. J. D. Gonzales completed a Physical Residual Functional Capacity Assessment form on June 6, 2003, and opined that Plaintiff was capable of lifting twenty pounds occasionally, ten pounds frequently, standing for about six hours in an eight-hour day, and sitting for about six hours in an eight hour day. Tr. 260-276.

The ALJ's decision that Plaintiff could perform unskilled work despite her mental impairments of major depression and a generalized anxiety disorder is supported by substantial evidence. Dr. John Roberts, a psychiatrist, examined Plaintiff on July 1, 2003. Plaintiff was diagnosed with a major depressive disorder in October 2002. She was admitted to the MUSC Institute of Psychiatry on October 4, 2002, secondary to an overdose attempt of Lopressor and Tylenol. Tr. 139. Plaintiff was diagnosed with a major depressive disorder and assessed with a global assessment of functioning (GAF) score of 65, indicative of some mild symptoms. Tr. 139. An anti-depressant (Celexa) was prescribed and it was noted that Plaintiff tolerated the medication well without any side effects. Tr. 140. Plaintiff reported to Dr. Roberts that she did not follow-up with psychiatric treatment following her October 2002 hospitalization and she discontinued use of Celexa secondary to headaches and lack of efficacy. She also reported that she had no inpatient or outpatient psychiatric treatment since October 2002. Dr. Roberts diagnosed major depressive episode with possible generalized anxiety disorder. Tr. 268-270. The decision is also supported by the opinion of Dr. Judith Von, a State agency psychologist who reviewed Plaintiff's records and completed Psychiatric Review Technique and Mental Residual Functional Capacity Assessment forms. Tr. 218-235. Dr. Von opined that Plaintiff's depression resulted in mild restrictions of her daily living activities, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, and one episode of decompensation. Tr. 228. She also opined that Plaintiff's ability to understand, remember, and carry out short instructions was not significantly limited; her ability to carry out a normal workday and workweek would be only moderately limited; she could attend work regularly; and she could concentrate for required periods. Tr. 232-234.

Plaintiff argues that the ALJ erred in not accepting the opinion of Dr. David Funsch, a psychiatrist who examined Plaintiff on December 5, 2002. Tr. 213-217. Dr. Funsch opined that Plaintiff "would have significant difficulty trying to maintain steady employment at this time." Tr. 216. The ALJ discounted this opinion because it was based on Plaintiff's subjective complaints and because Dr. Funsch's assessment of Plaintiff's GAF (55) was inconsistent with an opinion of not being able to work. Tr. 20. The decision to discount Dr. Funsch's opinion is supported by substantial evidence and correct under controlling law. Dr. Funsch examined Plaintiff on only one occasion. See 20 C.F.R. § 404.1527(d)(2)(I); Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983)(in evaluating how much weight should be given to an opinion of a physician, the nature and extent of the treatment relationship will be taken into account); Browning v. Sullivan, 958 F.2d 817, 823 (8th Cir. 1992)(one-time evaluation by a non-treating psychologist was entitled to little significance). There is no indication that Plaintiff sought any further treatment or took medication for these impairments. Dr. Funsch appeared to have based his opinion of disability on Plaintiff's subjective complaints which the ALJ found to be not credible to the extent that she claimed them to be disabling, as discussed further below. See Craig, 212 F.3d at 436 (ALJ properly disregarded portion of physician's report that was based on claimant's subjective description of symptoms). Additionally, an ALJ is not bound by a conclusory opinion of disability or entitlement to benefits, even when rendered by a treating physician, since the issue of disability is the ultimate issue in a Social Security case and that issue is reserved for the Commissioner. See 20 C.F.R. § 404.1527(e)(1); Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027 (10th Cir. 1994); see also Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)(statements that a claimant could not be gainfully employed are not medical opinions,

9

but opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner); King v. Heckler, 742 F.2d 968 (6th Cir. 1984); Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir.1984).

    B.    Credibility

Plaintiff alleges that the ALJ failed to properly evaluate her credibility. The Commissioner argues that the ALJ properly determined that Plaintiff's testimony was not credible to the extent she claimed she was precluded from performing all substantial gainful activity.

In assessing credibility and complaints of pain, the ALJ must (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ properly considered the medical and non-medical evidence in making his credibility determination. The ALJ's decision is supported by the medical record, as discussed

above. No physician placed any restrictions on Plaintiff's activities. Plaintiff was treated fairly conservatively and has not required extensive hospitalization. Plaintiff's lack of hospitalization or other significant treatment is inconsistent with her complaints of disabling pain. See Mickles, 29 F.3d at 921. Inconsistencies in the record also undermine Plaintiff's credibility. On September 17, 2002, Plaintiff completed a "Daily Activities Questionnaire" in which she listed very few activities and specifically noted that she no longer sang in the church choir (Tr. 90-92); however she reported to Dr. Funsch approximately three months later (on December 5, 2002) that she sold Avon products, used a computer at the library, attended church, helped with some housecleaning, talked with friends on the telephone, and sang in the church choir. Tr. 214-215. During the period at issue, Plaintiff became pregnant (see Tr. 248-259), delivered a child, and was able to care for her infant with some help from relatives (see Tr. 44-45). Plaintiff testified that she used a cane prescribed by her physician. The record, however, indicated that Plaintiff was able to ambulate without difficulty (Tr. 216); she had a normal station, gait, and coordination (Tr. 137, 239); and she had only mild weakness of her left leg (Tr. 239). There is no indication in the medical record that a physician ever prescribed the use of a cane.

    C.    Listings

Plaintiff alleges that the ALJ erred in failing to find that she met or equaled the Listings at § 11.09. Specifically, she argues that Dr. Gerald Quinn's examination on February 24, 2003, cannot constitute significant evidence for the ALJ's determination because Dr. Quinn admitted he did not have Dr. Grier's records available to him and that "[l]ater records reflect continued symptoms which include weakness, loss of sensation and strength in the arms and legs, syncope, and severe headaches with blurred vision." Plaintiff's Brief, at 14.

11

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also have the findings shown in the listing of that impairment. 20 C.F.R. § 404.1525(d); see Bowen v. Yuckert, 482 U.S. 137, 146 and n. 5 (1987)(noting the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. Medical equivalence can be found if the medical findings are at least equal in severity and duration to the listed findings. 20 C.F.R. § 404.1526(a).

"Medical equivalence must be based on medical findings," and "must be supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1526(b). Finally, a claimant has to establish that there was a "twelve-month period…during which all of the criteria in the Listing of Impairments [were] met." DeLorme v. Sullivan, 924 F.2d 841, 847 (9th Cir. 1991)(finding that the claimant's back impairment did not meet the requirements of section 1.05C; remanded on other grounds).

The Listings at § 11.09 require multiple sclerosis with:

    A. Disorganization of motor function as described in 11.04B;[2] or

---

[2]This section requires "Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)." Section 11.00C requires:
    Persistent disorganization of motor function in the form of paresis or paralysis,
    tremor or other involuntary movements, ataxia and sensory disturbances (any or
                                                                                                 (continued…)

> B. Visual or mental impairment as described under the criteria in 2.02, 2.03, 2.04, or 12.02; or
>
> C. Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.09.

Plaintiff fails to show that she met or equaled the Listings at § 11.09. On September 17, 2002, Dr. Grier noted that although Plaintiff had decreased strength in her left lower extremity, she had normal station gait and coordination, normal deep tendon reflexes of her upper and lower extremities, normal bulk and tone, and normal strength of her upper extremities. Tr. 137. On February 24, 2003, Dr. Quinn noted that Plaintiff had only very mild weakness of the distal left arm and leg not associated with true reflex asymmetry and she had normal spontaneous station, gait, and balance. Tr. 239. Dr. Grier's examination on January 9, 2004, revealed that Plaintiff's bulk, tone, station, gait, and coordination were normal. Tr. 327. Plaintiff testified that Betaseron helped her strength and ability to walk (Tr.42). "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1165-6 (4th Cir. 1986).

---

[2](…continued)
all of which may be due to cerebral cerbellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combination, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

13

Even after Plaintiff was noncompliant with her medication for a period of time, examination on January and March 2004 revealed that Plaintiff's strength, tone, and coordination were normal. Tr. 316, 322. There is also no indication in the medical record that Plaintiff has the visual requirements of § 11.09B. At the hearing, Plaintiff testified that she went to the eye doctor in August and he merely told her to come back in a year. Tr. 44. Additionally, the State agency physicians signed Disability Determination Transmittal forms (Tr. 50-51, 293, 300), indicating they considered the question of medical equivalence, but found Plaintiff did not meet or equal one of the Listings. See SSR 96-6p (signature of a State agency medical consultant on the "Disability Determination Transmittal" form ensures consideration was given to whether a Listing is met or equaled).

## CONCLUSION

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, supra. It is, therefore,

RECOMMENDED that the Commissioner's decision be affirmed.

Respectfully submitted,



Joseph R. McCrorey
United States Magistrate Judge

July 19, 2005
Columbia, South Carolina